UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOLOMAN HOLMAN,

    Petitioner,

v.

SHERRY BURT,

    Respondent,
_____/

Case No. 2:17-CV-11647
HON. NANCY G. EDMUNDS
UNITED STATES DISTRICT COURT

# OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Soloman Holman, ("Petitioner"), confined at the Muskegon Correctional Facility in Muskegon, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for assault with intent to do great bodily harm less than murder, M.C.L.A. 750.84; and being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons that follow, the petition for writ of habeas corpus is **DENIED**.

## I. Background

Petitioner was originally charged with assault with intent to commit murder. Petitioner was convicted of the lesser offense of assault with intent to do great bodily harm less than murder following a jury trial in the Wayne County Circuit Court. Petitioner was sentenced as a fourth felony habitual offender to 25 to 40 years in prison. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

1

Defendant attacked the victim with a hammer at a mental health treatment facility in Detroit. Before this incident, the facility had banned defendant from its premises because of his frequent and public drunkenness, and penchant for harassing other patients and workers. Nonetheless, defendant approached the center sometime during the afternoon of July 8, 2013. The victim, a patient who also acted as a voluntary employee of the facility, told a security guard that defendant was on the property. Defendant left the building after the security guard asked him to do so.

Several hours later, in the early evening, defendant returned to the treatment center and sat on the hood of an employee's car outside the building. The victim, who had just left the facility, saw defendant and attempted to get back inside, but the door had locked behind him. As defendant came toward the victim, the victim broke off a piece of wood from a pallet to defend himself, just as another employee opened the door to leave the building. According to the employee, defendant told the victim "I should f* *k you up," and he proceeded to attack the victim, by pulling a hammer from his pants and moving quickly toward the victim. The victim suffered injuries to his arm and head from defendant's assault and required 14 stitches at a local hospital.

Thereafter, the police arrested defendant and the prosecution charged him with, among other things, assault with intent to commit great bodily harm less than murder, pursuant to MCL 750.84. Defendant requested a jury trial, and the Wayne Circuit Court empaneled a jury to hear his case. At trial, the jury heard testimony from the victim, the aforementioned treatment center employee, the doctor who treated the victim, and defendant himself. The victim and employee testified to the above. The victim's account of defendant's assault was further supported by the doctor, who explained that the victim's injuries were consistent with being hit with a hammer, or attempts to avoid being hit with a hammer. The doctor stressed that hammer blows are extremely dangerous and potentially lethal.

Defendant's version of the events of July 8, 2013 differs from the victim's and the employee's. He testified that he visited the center on that date so he could speak with its director about lifting the ban on his presence in the facility. According to defendant, the victim confronted him during his evening visit and told him: "B* *ch, I'll meet you in the back." Defendant believed it would be best to fight the victim, despite his knowledge that the victim had served a prison term for murder. Outside the back of the building, defendant claimed that the victim swung a wood pallet at him, and he picked up a hammer lying on the ground to defend himself. The confrontation devolved into a brawl, which supposedly ended when the victim ran away. Defendant left the scene and did not inform the police of the victim's purported attack.

*People v. Holman*, No. 321918, 2015 WL 4635057, at *1 (Mich. Ct. App. Aug. 4,

2

2015)(internal footnotes omitted).

The conviction was affirmed on appeal. *Id., lv. den.* 499 Mich. 882, 876 N.W. 2d 551 (2016).

Petitioner seeks habeas relief on the following grounds:

I. Mr. Holman is entitled to a writ of habeas corpus where the Michigan Court of Appeals decision is contrary to or an unreasonable application of U.S. Supreme Court precedent when Mr. Holman's ability to present a defense was violated and the trial court forced him to waive his constitutional right to remain silent.

II. Mr. Holman is entitled to a writ of habeas corpus where the Michigan Court of Appeals decision is contrary to or an unreasonable application of U.S. Supreme Court precedent where Mr. Holman's Sixth and Fourteenth Amendment rights to confrontation were violated when prosecutor failed to produce *res gestae* witness.

III. Where the Michigan Court of Appeals decision is contrary to U.S. Supreme Court precedent Mr. Holman is entitled to a writ of habeas corpus when the court of appeals refused to provide "plain error" review of a constitutional violation [that the jury instructions were confusing and contradicted the verdict form].

IV. Mr. Holman is entitled to a writ of habeas corpus where the Michigan Court of Appeals decision is contrary to and/or an unreasonable application of U.S. Supreme Court precedent when Mr. Holman's sentence violates the Sixth and Eight[h] Amendments and the prohibition on mandatory minimum sentences.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

3

> States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

### III. Discussion

### A. Claim # 1. The self-incrimination/right to present a defense claim.

Petitioner claims that his right against self-incrimination and his right to present a defense were violated when the trial court refused to permit defense counsel to cross-

4

examine the victim about his 1992 conviction for second-degree murder, in order to buttress petitioner's claim of self-defense. Petitioner claims that his Fifth Amendment right to remain silent was violated because the judge's refusal to allow defense counsel to cross-examine the victim about his murder conviction compelled petitioner to give up his Fifth Amendment right against self-incrimination to testify that he knew that the victim had a prior murder conviction. [1]

The judge refused to allow defense counsel to cross-examine the victim about his 1992 murder conviction because M.R.E. 609 barred defense counsel from impeaching the victim with this conviction because it was more than ten years old. The prosecutor, however, agreed to stipulate to the victim's prior conviction when petitioner took the stand so that petitioner could explain his state of mind at the time of the fight in order to support his self-defense claim. Petitioner did, in fact, testify about his awareness of the victim's murder conviction. The judge refused to allow defense counsel to recall the victim and question him about the prior conviction. However, the prosecutor and defense counsel later stipulated to the admission of the victim's 1992 murder conviction. *People v. Holman*, 2015 WL 4635057, at * 1, n. 2; (Tr. 3/19/14, pp. 148-50).

The Fifth Amendment protects against compelled self-incrimination. *Ohio Adult*

---

[1] Respondent claims that petitioner's first and third claims are procedurally defaulted because he failed to object at trial. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Because petitioner's claims are meritless, the Court finds that the interests of judicial economy are best served by addressing the merits of the claims.

*Parole Authority v. Woodard*, 523 U.S. 272, 286 (1998). However, the defendant in a criminal trial is frequently forced to testify himself or herself and call other witnesses in an effort to reduce the risk of conviction. That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination. *Williams v. Florida*, 399 U.S. 78, 83-84 (1970). The decision whether or not to testify necessarily implies some collateral limitations on one's ability to assert a claim or defense. Such difficult litigation choices do not, however, substantially infringe Fifth Amendment rights. *Witter v. I.N.S.*, 113 F. 3d 549, 555 (5th Cir. 1997). The Fifth Amendment does not insulate a defendant from all difficult choices that are presented during the course of criminal proceedings or even from all choices that burden the exercise or encourage the waiver of the right against self-incrimination. *United States v. Frazier*, 971 F. 2d 1076, 1080 (4th Cir. 1992).

In the present case, the judge did not force petitioner to give up his Fifth Amendment right and testify. First, there is no indication that petitioner did not wish to testify. At the beginning of trial, defense counsel indicated in his opening argument that petitioner wanted to take the stand and tell his side of the story. (Tr. 3/18/14, p. 28). Later, when the judge ruled that defense counsel could not question the victim about his murder conviction, the judge indicated that he would be willing to declare a mistrial if petitioner decided to change his mind and exercise his right to remain silent. (*Id.*, p. 147). Petitioner chose to take the witness stand and present his self-defense claim. The mere fact that petitioner faced a dilemma between remaining silent or presenting a defense of self-

6

defense does not violate the Fifth Amendment. *Williams v. Florida*, 399 U.S. at 84.

The Court also rejects petitioner's right to present a defense claim. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he or she also has the right to present his or her own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (*quoting Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the

evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." See *Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

In the present case, petitioner was permitted to testify about the victim's prior murder conviction and the parties stipulated to the admission of the conviction into evidence. Petitioner also presented Ms. Trudy Williams, the Director of Team Programming with Team Mental Health Services, as a defense witness. Ms. Williams testified that the victim had a reputation for being "an aggravator," who often provoked fights with people at the facility. (Tr. 3/20/14, pp. 23-29). Having the victim actually testify about his prior 1992 murder conviction would have, at best, been cumulative of ample evidence that had been offered in support of petitioner's self-defense claim, including petitioner's own testimony concerning this prior conviction, thus, the Michigan Court of Appeals' determination that the exclusion of this evidence did not violate petitioner's right to present a defense was not an unreasonable application of clearly established law, so as to entitle petitioner to relief. See *Blanton v. Elo,* 186 F.3d 712, 715-16 (6th Cir. 1999). Petitioner is not entitled to relief on his first claim.

### B. Claim # 2. The due diligence/instruction claim.

Petitioner next claims that his right to a fair trial was violated when the judge excused the prosecutor from calling Daniel Sturdivant, a security guard at the mental health center, as a *res gestae* witness, because the police and prosecutor failed to exercise due diligence in finding and producing Mr. Sturdivant for trial. Petitioner also claims that the judge should have given the jurors an instruction that Mr. Sturdivant would have given favorable testimony for petitioner had he been called to testify.

8

The Sixth Amendment guarantees a defendant the right to confront witnesses and to have compulsory process for witnesses favorable to him or to her. However, the Sixth Amendment does not require the prosecution to call every witness who is competent to testify. *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992); *Whittaker v. Lafler*, 639 F. Supp. 2d 818, 825 (E.D. Mich. 2009). The right to confrontation does not impose a duty upon the prosecution to call a particular witness. *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972); *See also Turnbough v. Wyrick*, 420 F. Supp. 588, 592 (E.D. Mo. 1976)(right to confrontation not denied by state's failure to call victim as a witness). Stated differently, the Confrontation Clause "is not a guarantee that the prosecution will call all the witnesses it has against the defendant." *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985). In *Cooper v. California*, 386 U.S. 58, 62, n. 2 (1967), the U.S. Supreme Court found a habeas petitioner's contention that he was deprived of his right to confrontation because the state did not produce an informant to testify against him to be "absolutely devoid of merit." *Id.* The Sixth Amendment right to confrontation "does not come into play where a potential witness neither testifies nor provides evidence at trial." *United States v. Porter*, 764 F. 2d 1, 9 (1st Cir. 1985)(internal citations omitted).

Federal law does not require the production of *res gestae* witnesses. *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). The requirement under Michigan law that prosecutors produce *res gestae* witnesses is simply a matter of state law whose enforcement is beyond the scope of federal habeas review. *See Collier v. Lafler*, 419 F. App'x. 555, 559 (6th Cir. 2011). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe

that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F. 2d 192 (Table), 1988 WL 87710, * 2 ( 6th Cir. Aug. 24, 1988)(citing to *United States v. Bryant*, 461 F. 2d at 916). Thus, whether a prosecutor exercised due diligence in attempting to locate a *res gestae* witness is outside the scope of federal habeas review. *Collier*, 419 F. App'x. at 559. Petitioner presented no evidence that Mr. Sturdivant would have offered exculpatory evidence had he testified; he is not entitled to habeas relief.

The Court rejects the related instructional error claim. A habeas petitioner is entitled to relief only if the defective jury instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). A federal court may not grant habeas relief on the ground that a jury instruction was incorrect under state law, *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991), and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

A criminal defendant does not have a clearly established federal right to a missing witness instruction. Petitioner therefore cannot obtain federal habeas relief based on the state court's failure to give an instruction to his jury regarding the prosecution's failure to produce the endorsed witness. *See Stadler v. Curtin*, 682 F. Supp.2d 807, 821-22 (E.D. Mich. 2010). Petitioner is not entitled to relief on his second claim.

### C. Claim # 3. The instructional error claim.

Petitioner claims that his right to a fair trial was violated when the judge gave the jury confusing instructions regarding the order of deliberations with respect to the original assault with intent to commit murder charge and the two lesser included offenses of

10

assault with intent to do great bodily harm less than murder and felonious assault. Petitioner was ultimately convicted of assault with intent to do great bodily harm less than murder and found not guilty of the assault with intent to commit murder charge and the lesser offense of felonious assault.

> The judge gave the following instruction to the jurors:
>
> In this case there are three different charges against the defendant you can consider.
>
> When you discuss the case, first consider the crime of assault with intent to murder. If you all agree the defendant is guilty of that crime, you may stop you discussions and return a verdict.
>
> If you believe the defendant is not guilty of assault with intent to murder, or if you cannot agree on that crime, you should consider the less serious crime of assault with intent to do great bodily harm less than murder.
>
> You decide how long you spend on each of these offenses before discussing the next one.
>
> The same thing that goes for assault with intent to do great bodily harm less than murder. If you find the defendant guilty of that offense, you stop your deliberations at that point. If you can't agree, or if you find that he's not guilty of that, then you consider the third of the three alternative, that being assault with a dangerous weapon felonious assault.
>
> In other words, you're only going to either find the defendant not guilty of all charges, or guilty of one of them. You're not going to find the defendant guilty of any more than one.
>
> If you find that the proof has been presented of guilt beyond a reasonable doubt with respect to that one, then you are finished. Or, if you find the defendant not guilty of all three then you are finished.
>
> In other words, only find the defendant guilty of one, if you find that proof has been presented beyond a reasonable doubt. Then you are done.
>
> As I said, if you can't decide, or if you find him not guilty on count one, you move to count two. If you can't decide, or if you find not guilty on count two, you then consider count three. And so on down the line. So, I think I've explained that clearly.

(Tr. 3/20/14, pp. 101-02).

Petitioner is not entitled to habeas relief on his claim. An identical jury instruction concerning the order of deliberations was upheld as constitutional by the Sixth Circuit, on the grounds that the instruction accurately reflected Michigan law with respect to the order of deliberations. *See Casnave v. Lavigne*, 169 F. App'x. 435, 445 (6th Cir. 2006)(citing *People v. Handley*, 415 Mich. 356, 329 N.W.2d 710, 712 (1982)).

To the extent that petitioner argues that the jury verdict in finding him guilty of assault with intent to do great bodily harm less than murder is inconsistent with a finding that he was not guilty of felonious assault, he would not be entitled to relief. Inconsistency in a verdict is an insufficient reason for setting a verdict aside. *Harris v. Rivera*, 454 U.S. 339, 345 (1981); *See also Mapes v. Coyle*, 171 F. 3d 408, 419-20 (6th Cir. 1999). In any event, as the Michigan Court of Appeals noted in rejecting petitioner's claim, the two offenses contain different elements. Petitioner is not entitled to relief on his third claim.

### D. Claim # 4. The sentencing claim.

Petitioner claims that the mandatory minimum twenty five year sentence that he received for being a fourth felony habitual offender constitutes cruel and unusual punishment. Petitioner also claims that his sentence violates his Sixth Amendment right to a jury trial because the prior convictions that were used to charge him with being a fourth felony habitual offender were not submitted to a jury and proven beyond a reasonable doubt.

A habeas petitioner who seeks to challenge the severity of a prison sentence on Eight Amendment grounds faces a formidable challenge. He or she may obtain relief only

by demonstrating that a state court decision contravened or misapplied "clearly established" Supreme Court precedent. However, the Supreme Court has acknowledged "that our precedents in this area have not been a model of clarity." *Lockyer v. Andrade,* 538 U.S. 63, 72 (2003). "Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." *Id.* Thus, the Supreme Court declared that the general applicability of the proportionality standard to term-of-years sentences was clearly established, but confessed a lack of clarity as to the factors lower courts should consider in making that determination. *Id.* The Supreme Court concluded that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.*

In *Lockyer,* the Supreme Court reversed the Ninth Circuit's grant of a writ of habeas corpus on the ground that two twenty-five-year-to-life sentences imposed under California's "three strikes" law, where the triggering felony was the theft of $150 worth of video tapes, violated the Cruel and Unusual Punishment Clause of the Eighth Amendment. The Supreme Court noted that the "thicket" created by its jurisprudence consisted primarily of its decisions in *Solem v. Helm,* 463 US. 277 (1983), *Harmelin v. Michigan,* 501 U.S. 957 (1991), and *Rummel v. Estelle,* 445 U.S. 263 (1980). The California state court observed that the proportionality rule set forth in *Solem* was cast into doubt by *Harmelin,* and proceeded to analyze Andrade's sentence under the approach taken in *Rummel,* where the Supreme Court rejected a claim that a life sentence imposed under Texas' recidivist

13

statute was grossly disproportionate to the theft felonies that formed the predicate for the sentence. The California court concluded that Andrade's sentence was not disproportionate. The Supreme Court held that this decision was not contrary to or an objectively unreasonable application of federal law that was clearly established by the Supreme Court. *Lockyer,* 538 U.S. at 72-77.

A plurality of the Supreme Court held that the Eighth Amendment does not require strict proportionality between the crime and sentence. *Harmelin,* 501 U.S. at 965. As the Supreme Court observed in *Lockyer,* it is generally recognized after *Harmelin* that the Cruel and Unusual Punishment Clause of the Eighth Amendment forbids only an extreme disparity between crime and sentence, that is, sentences that are "grossly disproportionate" to the crime. *Id.* at 1001 (Kennedy, J., concurring); *Coleman v. Mitchell,* 268 F. 3d 417, 453 (6th Cir. 2001)(citing *Coker v. Georgia,* 433 U.S. 584, 592 (1977)); *United States v. Hopper,* 941 F. 2d 419, 422 (6th Cir. 1991)).

"Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel,* 445 U.S. at 272. Rummel was convicted of obtaining $ 120.75 by false pretenses, a crime punishable by at least two years, but not more than ten years in prison. He was sentenced as a recidivist to life imprisonment with the possibility of parole. His two prior felonies consisted of fraudulent use of a credit card to obtain $ 80 worth of goods and services, a felony punishable by two to ten years in prison; and passing a forged check for $ 28.36, a crime punishable by two to five years in prison. The Supreme Court held that Rummel's life sentence under the state recidivist statute did not constitute cruel and unusual punishment.

In *Harmelin,* the Supreme Court upheld a life sentence without the possibility of parole for possession of more than 650 grams of cocaine for an offender with no prior felony convictions.

The Supreme Court overturned a life sentence in *Solem* on the ground that it was significantly disproportionate to Helm's crime and therefore prohibited by the Eighth Amendment. However, Helm had been sentenced to life imprisonment *without* the possibility of parole for uttering a "no account" check for $ 100, and his prior felonies also were minor, nonviolent crimes. By contrast, the Supreme Court reaffirmed *Rummel* and found constitutionally sufficient a sentence of twenty-five years to life imposed upon a fifth felony conviction. *Ewing v. California,* 538 U.S. 11, 24-31 (2003).

In the present case, petitioner's sentence fell within the maximum sentence set by state law, and "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek,* 65 F. 3d 60, 62 (6th Cir. 1995)(citation omitted)(quoted with approval in *Austin v. Jackson,* 213 F. 3d 298, 302 (6th Cir. 2000). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin,* 213 F. 3d at 301 (quoting *Williams v. New York,* 337 U.S. 241, 245 (1949)).

In light of "the vagueness of the gross-disproportionality principle and the admonition that the principle is "applicable only in the 'exceedingly rare' and 'extreme' case," this Court concludes that the state courts did not unreasonably apply clearly established law in rejecting petitioner's proportionality claim. See *Smith v. Howerton,* 509 F. App'x. 476, 484

15

(6th Cir. 2012)(internal quotations omitted).

Petitioner's minimum sentence of twenty five years for being a fourth felony habitual offender was not disproportionate to the offense or to the offender. The fact that Michigan's fourth felony habitual offender statute calls for a mandatory minimum sentence of 25 years does not alter the Court's analysis of petitioner's claim. Indeed, "*Harmelin* squarely establishes that the mandatory nature of a non-capital penalty is irrelevant for proportionality purposes." See *U.S. v. Farley*, 607 F.3d 1294, 1343 (11th Cir. 2010)(holding that thirty-year mandatory minimum sentence imposed on adult defendant for violating statute prohibiting crossing a state line to engage in sexual activity with a child under age 12 was not constitutionally disproportionate in violation of the Eighth Amendment); See also *U.S. v. Brown*, 443 F. App'x. 956, 960 (6th Cir. 2011)(mandatory prison sentences not cruel and unusual punishment). Indeed, the Supreme Court in *Harmelin* upheld a mandatory nonparolable life sentence for the offense of possession of over 650 grams of cocaine. *Harmelin* thus "precludes the conclusion that [petitioner's] much shorter mandatory minimum sentence" was "cruel and unusual." *U.S. v. Blewett*, 746 F.3d 647, 660 (6th Cir. 2013).

Petitioner further claims that his sentence as an habitual offender violated his Sixth Amendment right to a jury trial because the prior convictions that were used to charge him as an habitual offender were not presented to a jury and proven beyond a reasonable doubt.

Respondent notes that this portion of petitioner's claim is unexhausted, but urges this Court to deny the claim on the merits. A habeas petitioner's failure to exhaust his or

her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). An unexhausted claim may be addressed if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *See Prather v. Rees,* 822 F.2d 1418, 1422 (6th Cir.1987).

In *Almendarez–Torres v. United States*, 523 U.S. 224, 241–42 (1998), the Supreme Court held that prior convictions which enhance a defendant's sentence are not elements of a crime that must be submitted to a jury and proven beyond a reasonable doubt.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the U.S. Supreme Court held that "*[O]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added).

In *Alleyne v. United States*, 133 S. Ct. 2151, 2155 ( 2013), the Supreme Court extended the rule in *Apprendi* and held that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt. The Supreme Court in *Alleyne,* however, expressly declined to overrule *Almendarez–Torres* "'narrow exception to this general rule for the fact of a prior conviction." *Id.,* 133 S.Ct. at 2160, n. 1. "*Almendarez–Torres* is still good law and will remain so until the Supreme Court explicitly overrules it." *United States v. Nagy*, 760 F.3d 485, 488 (6th Cir. 2014)(quoting *United States v. Anderson*, 695 F.3d 390, 398 (6th Cir. 2012)); *See also United States v. Pritchett*, 749 F.3d 417, 434 (6th Cir. 2014)("*Alleyne* did not disturb the holding in *Almendarez–Torres* "). Accordingly, the prosecutor's failure to

17

submit petitioner's prior convictions to the jury in order to support petitioner's sentence as a fourth felony habitual offender did not violate the Sixth Amendment. *Nagy,* 760 F. 3d at 489, *Pritchett,* 749 F.3d at 434. Petitioner is not entitled to relief on his fourth claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus with prejudice. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

*Nancy Edmunds*
HON. NANCY G. EDMUNDS
UNITED STATES DISTRICT COURT JUDGE

Dated: 1/29/18